UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| FLORENCE PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 08-119-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Florence Price ("Price") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 10 and 11] Through this action, Price seeks to reverse the decision of an Administrative Law Judge ("ALJ"), who concluding that, "based on the application filed on November 27, 2000, the claimant is not eligible for Supplemental Security Income under Sections 1602 and 1614(a)(3)(A) of the Social Security Act." [Transcript, p. 30 ("Tr., p. ___")] However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will deny Price's motion and grant the relief sought by the Commissioner.

I.      BACKGROUND

Price filed an application for Supplemental Security Income ("SSI") on November 27, 2000, alleging an onset of disability as of November 14, 2000.[1] The claim was denied initially and upon reconsideration. Thereafter, Price requested a hearing before an ALJ. On August, 13, 2002, ALJ Donald T. McDougall presided over hearing in Prestonburg, Kentucky. [Tr., p. 20] During the administrative hearing, the ALJ received testimony from Price and William Louis Tanzey, an impartial Vocational Expert. [Tr., pp. 250–74] Thereafter, on August 26, 2002, the ALJ issued a decision denying benefits to Price, concluding that at no time through the date of the decision was Price under a disability as defined by the Social Security act, and therefore Price was not eligible for SSI under Sections 1602 and 1614(a)(3)(A) of the Social Security Act. [Tr., pp. 20–30].

At the time of the administrative hearing, Price was a 54 year-old individual with an eighth-grade education and no relevant past work experience.[2] [Tr., p. 21] Price alleges disability beginning November 14, 2000, due to the following impairments: back, neck and shoulder pain and stiffness; arthritis in the back, arms, and shoulders; poor vision; pounding sensation in her ears and eyes; breathing problems; high blood pressure; poor blood circulation in her legs and feet; burning sensation in her stomach from medication; dropped bladder; frequent urination; bad nerves; depression; nervousness; anxiety; restlessness; problems being

---

1.      The November 27, 2000, application was Price's second application for SSI. She had previously filed an application for SSI in October 1997. On November 3, 2000, the Appeals Council upheld the unfavorable ALJ hearing decision that had been issued on February 26, 1999. The claimant subsequently filed an unsuccessful appeal with this Court. [Tr., p. 20]

2.      Price testified in the administrative hearing that she has never worked outside the home. [Tr., p. 264]

in crowds; tendency to anger easily; frustration; poor memory; limited education; chronic pain and muscle spasms in the back; recent weight gain; fatigue; lack of energy; sleep difficulties; chronic headaches; and frequent bronchitis. [Tr., pp. 21, 92, 99] Upon reconsideration of the initial denial of her disability claim in March 2001, Price wrote that her arthritis and nerves are worse, and that she could no longer deal with people. [Tr., p. 101] She reiterated these worsening conditions in conjunction with her hearing request in July 2001. [Tr., p. 125]

After reviewing the medical evidence of record and the testimony presented during the administrative hearing, the ALJ found that Price suffers from a severe impairment or impairments. [Tr., p. 29] However, he also concluded that these impairments did not meet or medically equal one of the listed impairments. *See* 20 C.F.R. Part 404 Appendix 1 (Listing of Impairments); 20 C.F.R. § 416.925 (explanation of Listing of Impairments); 20 C.F.R. § 416.926 (explanation of "medical equivalence" of listed impairments) [Tr., p. 29]

The ALJ also found that Price retained the residual functional capacity ("RFC") to perform light exertion work with some limitations. *See* 20 C.F.R. § 416.945 (explanation of residual functional capacity); 20 C.F.R. § 416.967(b) (defining "light work") [Tr., p. 29] Specifically, the ALJ found:

> The claimant has the residual functional capacity to perform a range of light work subject to the following limitations: jobs must allow a brief (1-2 minutes) change of position every 30 minutes; jobs must require no reading, writing, or arithmetic to be performed at more than a second grade level; jobs must not entail concentrated exposure to extreme hot or cold temperatures; job must entail no more than rare contact with the general public and no close interaction with coworkers or supervisors; jobs must require no more than occasional balancing[,] stooping, kneeling, crouching, crawling or climbing of stairs/ramps and no climbing of ropes, ladders or scaffolds; and jobs must accommodate absence of up to one work day per month.

[Tr., p. 29] Based on the medical evidence in the record and the testimony of both Price and the Vocational Expert, the ALJ concluded that Price, "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." [Tr., p. 21]

## II. LEGAL STANDARD

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Barnhart v. Thomas*, 540 U.S. 20, 23 (2003) (quoting 42 U.S.C. § 1382c(a)(3)(B)). This definition is qualified, however, as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that *he is not only unable to do his previous work but cannot*, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy*.

*Id.* (emphasis from *Thomas* included).

A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" 20 C.F.R. § 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, if a dispositive finding is made at any point in the five-step process, the review terminates. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a

claimant must show that she suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work which exists in the national economy.[3] 20 C.F.R. § 416.920(e). If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the

---

3. "'[W]ork which exists in the national economy' is defined to mean 'work which exists in significant numbers either in the regions where such individual lives or in several regions of the country.'" *Thomas*, 540 U.S. at 23–24.

correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin,* 475 F.3d at 730; *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.  DISCUSSION**

Price's sole argument is that the ALJ erred by acting as his own medical expert. In support of this assertion, she notes that the treatment records from the Mountain Comprehensive Care Center ("MCCC") dated, April 22, 2002, were not available for review by Dr. William R. Rigby, the state psychologist, when he provided his opinion on January 4, 2001. [Tr., pp. 130–34, 219–23] These MCCC records indicate that Price scored a 43 on a Global Assessment of Functioning ("GAF") evaluation, which was an 11 point decrease from her highest score in the past year.[4] [Tr., p. 223] Price contends that while her MCCC records were received into evidence, no medical professional of record had an opportunity to review these records, including her GAF score, for their significance. [Record No. 10, p. 3] Price notes that in his decision, the ALJ stated that he "believes that the claimant's mental health symptomatology since October 2000 has to a significant degree reflected a normal or predictable response to various social, physical, and situational stressors." [Tr., p. 26] Price contends that, assuming arguendo, this ALJ determination was "medically supported for the period from the Plaintiff's alleged onset date until the March 16, 2001 Psychiatric Review Technique Form[,] it was medically *unsupported* for the period of March 17, 2001 until the August 26, 2002 decision

---

4.    Global Assessment of Functioning is a method of evaluating a person's psychological, social, and occupational functioning on a hypothetical continuum of mental health illnesses. Physical or environmental limitations on the person are not considered when determining a person's GAF score. The scale ranges from 0 to 100 with a higher score being indicative of fewer, or less severe, symptoms related to mental illness.

   GAF scores in the range 41–50 can be indicative of "Serious symptoms (e.g. suicidal ideation, severe obsessive rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

   Additional information on Global Assesment of Functioning along with the scoring scale can be found at http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

date." [Record No. 10, p. 3] Consequently, Price claims that the ALJ "played doctor" when he relied on his own expertise in assessing her MCCC records and GAF score. [Record No. 10, p. 4] For this reason, Price contends that the ALJ's decision is not substantially supported by the evidence, and requests that this Court grant her motion for summary judgment and reverse the ALJ's August 26, 2002 administrative decision.

The Commissioner asserts that the ALJ's decision denying benefits to Price is supported by substantial evidence in record. Specifically, he asserts that no medical expert was need to evaluate the GAF score for the purposes of assessing Price's RFC and, therefore, the ALJ did not err. [Record No. 11, p. 11–12] Accordingly, the Commissioner contends that the ALJ's decision should be affirmed.

### A. Allegations that the ALJ "Played Doctor"

Price contends that the ALJ's assessment of her MCCC treatment records are akin to the ALJ "playing doctor," because he evaluated these records as part of his administrative decision-making process despite the fact that no medical expert had reviewed the records for their significance. In support of her argument, Price relies upon *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000), and *Manso-Pizarro v. Sec'y*, 76 F.3d 15 (1st Cir. 1996).

In *Green*, the Seventh Circuit dealt with a case in which the ALJ had discounted significant evidence in the record which indicated that the claimant had a severe medical impairment. *Green* did not hold that all medical records must be reviewed by a medical expert. Rather, the Seventh Circuit held that: (1) the Commissioner should have a claimant reviewed by a medical expert if evidence in the record suggests that the claimant may be disabled, and (2) an

ALJ's independent review of the medical evidence must bridge the evidence he is reviewing to his conclusions. *Green*, 204 F.3d at 781.

In *Manso-Pizarro*, the First Circuit dealt with a case in which the ALJ evaluated the medical records, and without seeking expert guidance, found that the claimant could perform past work despite her limitations. *Manso-Pizarro*, 76 F.3d at 16. Based on this finding, the ALJ determined that the claimant failed to carry her burden to prove that she was disabled. *Id.* On appeal, the First Circuit held that:

> [when] a claimant has sufficiently put her functional ability to perform her prior work in issue, the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.

*Id.* at 17. In reaching its holding, the First Circuit noted that the record did not contain any analysis of the claimant's functional capacity by any physician or other expert. *Id.*

Both *Green* and *Manso-Pizarro* are distinguishable from the present case, and this Court finds neither to be persuasive here. Unlike *Green*, the evidence in the record demonstrates that Price was examined by multiple doctors. [Tr., p. 23–27] Further, the ALJ provided a thorough recitation of the evidence and provided a compelling basis for his conclusion that Price was not disabled. [Tr., pp. 20–30] *Manso-Pizarro* is not on point because it deals with a different type of administrative finding. Unlike *Manso-Pizarro*, the ALJ in the present case did find that Price met her burden to show that she was unable to perform past work. However, based on the evidence in the record and the testimony of both Price and the vocational expert, the ALJ

concluded that there were jobs available in the national economy that Price could perform despite her limitations. [Tr., pp. 29–30]

Disability determinations are administrative findings that are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). As long as the determination is supported by substantial evidence, the discussion of whether the ALJ "played doctor" with regard to Price's MCCC records is irrelevant. *See generally Colvin*, 475 F.3d at 730 ("If the Commissioner's decision is supported by substantial evidence, we must defer to that decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

### B.     The ALJ's Decision is Supported by Substantial Evidence

The determination of whether a claimant meets the statutory definition of disabled is an administrative decision, and not a medical opinion. 20 C.F.R. § 416.927(e). Therefore, a medical opinion which categorizes the claimant as "disabled" or "unable to work" does not mean that the ALJ will find the claimant to be under disability as defined in the Social Security Act. 20 C.F.R. § 416.927(e)(1). The ALJ often considers medical opinions when determining whether a claimant qualifies as disabled, including the opinions of treating physicians and state medical consultants. These opinions can be given controlling weight, but only if the opinions are supported by the evidence. *See Hoskins v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if there opinions are supported by the evidence"); *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002) ("[The] opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, and is not contradicted

by substantial evidence to the contrary. The Commissioner may reject the opinion of a treating physician where good reasons are found to do so in the record."). Consequently, if a medical opinion is not supported by other evidence in the record, the ALJ can reject the opinion as long as the ALJ articulates good reasons for doing so. 20 C.F.R. § 416.927(d)(2).

In the present case, this Court concludes that the ALJ properly examined the medical evidence in the record to assess Price's RFC. [Tr., pp. 23–27] This includes considering the opinions of Dr. Barretta Casey, Dr. Stephen Nutter, and Dr. Carlos Hernandez regarding Price's physical health, as well as the opinions of Dr. William R. Rigby and Dr. Jay Athy regarding Price's mental health. [*Id.*] The ALJ noted that, while he did consider the medical opinions in the record, his determination that Price's assertions were only partially credible led him to not accept such opinions based solely on her subjective complaints. [Tr., p. 24]

An ALJ's determinations of credibility are given great weight because the ALJ is charged with observing the claimant's demeanor during the hearing. *Cruse*, 502 F.3d at 542. Accordingly, an ALJ is not required to accept a claimant's subjective complaints, and may take the claimant's credibility into account when determining whether she is disabled. *Id.* In the present case, the ALJ found Price's allegations to be only partially credible because of numerous inconsistencies between her allegations and other evidence in the record. Specifically, the ALJ notes that:

> When first asserting her total disability in 1997 at age 49, the claimant evidenced little to no prior historical need, desire, or motivation to work. The claimant wrote in November 2000 that she had never felt secure enough to work in public. However, she acknowledged that she went shopping and to church weekly. She reported that she had never received treatment from a psychiatrist or any type of

> mental health treatment facility. She denied any prior hospitalization, emergency room treatment, or current use of medication for anxiety, depression, nervousness or similar condition. A consultive examining psychologist noted in January 2001 that the claimant interacted socially as a competent adult and appeared to have appropriate social skills for her age and background. The examiner believed that the claimant possessed good ability to relate to others such as fellow workers and supervisors. . . . At a consultive physical examination in January 2001, the claimant asserted that she was claiming disability because of pain in her neck and shoulders, stating that her condition had started first in her back. At a doctor visit in June 2002, the claimant denied any complaints other than pain in her hip and shoulder related to a longstanding arthritis problem. Despite her allegations of chronic pain, the claimant is prescribed no medication for pain relief and takes only extra strength Tylenol. The claimant testified at the August 2002 hearing that she had sought no mental health treatment until April 2002. It appears that the claimant took no medication for symptoms related to depression and anxiety until May 1, 2002. Two weeks later the claimant reported that the medication helped to relax her and she was described as pleasant with organized thoughts and no psychotic symptoms. On June 14, 2002, the claimant reported that her medicine seemed "to be doing good" and her mood was described as stable and "better." The claimant was described again as pleasant and demonstrated good hygiene.

[Tr., p. 23 (citations to record omitted)] Accordingly, the ALJ properly evaluated the evidence in the record to determine Price's RFC, and gave good reasons for finding Price's allegations to only be partially credible.

When evaluating a record to determine a claimant's RFC, an ALJ is not required accept inconsistent medical testimony. *See* 20 C.F.R. § 416.927(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence we have."). In his evaluation of Price's GAF score, the ALJ noted that:

> She was accorded a Global Assessment of Functioning (GAF) score of 43, generally considered indicative of serious symptoms/impairment in social or

> occupational functioning. The Administrative Law Judge is aware of no prior claimant allegations of hallucinations or significant testimony in that regard. On May 15, 2002, she reported hallucinations "sometimes" but that shew as getting along; she certainly reported no hallucinations at her psychological examination by Dr. Rigby. As previously noted, the claimant's symptoms appear to have improved after she initially sought counseling and she responded well to medication prescribed in May2002. Her mood and appetite were described as "stable" on June 14, 2002.

[Tr., p. 26 (citations to the record omitted)] The administrative decision demonstrates that the ALJ did evaluate Price's GAF score, and that he did not accept its results because of its inconsistency with other medical evidence dated both prior to, and after, Price received a GAF score of 43. Accordingly, this Court finds the ALJ provided good reasons for not accepting Price's GAF score when evaluating the medical evidence to determine Price's RFC.

Based on the medical evidence in the record, the ALJ determined Price had an RFC to perform a range of light work. [Tr., p. 29] During the administrative hearing, the ALJ posed a proper hypothetical question to the vocational expert to determine whether there was any work Price could perform based on the cumulative effect of her RFC, age, education, and past work experience. [Tr., p. 270–71] Specifically, the ALJ posed the following hypothetical question:

> If we assume a person of the same age, education, or work experience as the Claimant, assume a person who's able to do light work, as that's defined in the Commissioner's regulations, but the person should have to be able to change positions briefly. By briefly, I mean just for a minute or two, at least every half-hour. In addition, the person should – [sic] no reading, writing, or math at more than the second grade level, and no concentrated heat or cold temperatures. The job should not involve more than rare contact with the general public, and no close interaction with co-workers or supervisors. . . . Would there be any jobs such a person could do at that light level? Well, let me – I need to actually put it, no ladders, ropes, or scaffolding, no more than occasional stairs or ramps, no more than occasional [need to] balance, stoop, kneel, crouch, or crawl. Would there be any jobs such a person could do?

[Tr., p. 270–71] The vocational expert testified that the number of jobs a person with those hypothetical limitations could perform would be small due to "the lack of any work experience and the age and illiteracy, combining with the occupational factors that you gave." [Tr., p. 271] However, the vocational expert testified that there were jobs that a person with those hypothetical limitations could still perform in the national and/or regional economy including, elderly companion, hand packaging, and hand assembler jobs. [*Id.*] Based on the vocational expert's testimony, the ALJ found that "[a]lthough the claimant's exertional limitations do not allow her to perform the full range of light work . . . there are a significant number of jobs in the national economy that she could perform." [Tr., p. 29]

Pursuant to the medical evidence in the record along with the testimony of Price and the vocational expert, the ALJ properly concluded that "the claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." [*Id.*] *See* 20 C.F.R. § 416.920 ("Your impairment(s) must prevent you from making an adjustment to any other work. If you can make an adjustment to other work, we will find you not disabled."). Accordingly, the administrative decision that Price was not disabled was based on substantial evidence.

**IV. CONCLUSION**

For the reasons discussed herein, it is hereby **ORDERED** that:

(1) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**;

(2) Plaintiff Florence Price's Motion for Summary Judgment [Record No. 10] is **DENIED**;

(3) The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 24th day of September, 2008.

Signed By:
*Danny C. Reeves*   DCR
United States District Judge